# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## EUGENE S. HOBBS v. NATIONAL BANK OF PETERSBURG.

### May 27, 1926.

1. PARTNERSHIP—*Liability of Ostensible Partner—Case at Bar.*—This case is similar in all respects except one to the case of *Hobbs* v. *Virginia National Bank of Petersburg, post,* page 802, and is governed by the same principles.

2. PARTNERSHIP—*Liability of Ostensible Partner where Alleged Partner Denied His Signature—Case at Bar.*—The only respect in which this case differed from *Hobbs* v. *Virginia National Bank of Petersburg, post,* page 802, was that in the instant case defendant denied his signature to a statement of financial conditions, made by the alleged partnership to the plaintiff bank, introduced in evidence. The court, however, instructed the jury that before they could consider the statement the burden was upon the plaintiff to show by the greater weight of evidence that the same was actually signed by defendant.

    *Held:* That the difference in the two cases was fully covered by this instruction.

Error to a judgment of the Hustings Court of the city of Petersburg, in a proceeding by motion for a judgment for money.    Judgment for plaintiff.    Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Mann & Townsend,* for the plaintiff in error.

*Plummer & Bohannan,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

[1, 2] This case arose out of an action brought against the plaintiff in error, Eugene S. Hobbs, and another,

by the National Bank of Petersburg, in which it was sought to hold the plaintiff in error here to the liability of a partner of J. W. Thomas & Company. The case presented by the record is in its main features similar to the case of *Eugene S. Hobbs* v. *Virginia National Bank of Petersburg, Virginia,* decided by this court May 28, 1925, *post,* page 802, and in which a rehearing was granted.

The evidence shows that the bank, the plaintiff in the lower court, had been doing business with J. W. Thomas & Company since 1900, and loans to that firm increased until at the time of the death of Mr. Thomas they amounted to over $12,000.00, for which a judgment was rendered in the lower court. The evidence is quite similar to the evidence upon the trial of the action brought by the Virginia National Bank of Petersburg, Virginia. The bank in this case was the bank to which the statement of 1922, purporting to have been signed by Thomas and Hobbs, and in which it was stated that they were partners and had been such since 1900, was given. There is one distinction between the two cases arising from the fact that in this case Mr. Hobbs disputed his signature to the statement of 1922, and there was some evidence tending to raise a doubt as to whether that signature was in his own handwriting. In view of that character of evidence, the court instructed the jury as follows: "The court instructs the jury that before they can consider the statement dated January 1, 1922, for any purpose at all, the burden is upon the plaintiff to show by the greater weight of the evidence that the same was actually signed by E. S. Hobbs." The difference in the evidence in this respect in the two cases is fully covered by this instruction.

The instructions given by the court to the jury at the end of all the evidence in this case were far more

favorable to the defendant, Hobbs, than those given by the court in the case of the Virginia National Bank of Petersburg, Virginia, and without reviewing the instructions at length, it is sufficient to say that we find nothing in them prejudicial to the plaintiff in error.

This case depends in all respects, except those just pointed out, upon the principles of law which governed the court in its decision in the prior case referred to, and it is unnecessary to repeat what was there said. For the reasons set out in the opinion of the court, reported, *post*, page 802, 128 S. E. 46, and in the opinion rendered this day upon the rehearing in the case of *Eugene S. Hobbs* v. *Virginia National Bank of Petersburg, Virginia, post*, page 802, we are of opinion that Hobbs became a partner by estoppel with reference to the notes sued on. For the same reasons given in the last mentioned opinion the case will be reversed solely for the purpose of having the issues therein prescribed tried by a jury. An order to that effect similar to the order in the other case will be entered, and so the case will be reversed and remanded.

CHRISTIAN, J., dissenting:

This case is like that of *Hobbs* v. *Virginia National Bank, post*, page 802, 128 S. E. 46, in most respects, and my dissenting opinion in that case applies to this also except as herein further discussed.

This was an action in the Hustings Court of Petersburg by the National Bank of Petersburg against Eugene S. Hobbs, surviving partner of J. W. Thomas, deceased, and himself, doing business as J. W. Thomas & Company and Willie H. Thomas as endorser on four notes aggregating $12,200.00. Hobbs denied he was a partner and this issue was tried before a jury that

rendered a verdict against Hobbs, upon which judgment was entered by the court, and Hobbs has brought the case before us for review.

The errors assigned, exceptions taken and evidence to sustain the plaintiff's claim is the same as that of *Hobbs* v. *Virginia National Bank of Petersburg, post,* page 802, 128 S. E. 46, this day decided, except the plaintiff introduced the agreement dated the 1st day of February, 1900, and the statement of January 1, 1922, alleged to have been signed by both Hobbs and Thomas, which latter statement will be considered independently.

The plaintiff extended credit to J. W. Thomas & Company, amounting to $21,500.00 and $19,500.00, as of January 1, 1922, upon the understanding that Hobbs was a partner of J. W. Thomas. This understanding was based upon the statement of J. W. Thomas made without the knowledge and consent of Hobbs. So that the plaintiff's right to recover depends almost entirely upon the legal effect of the agreement between Hobbs and Thomas, dated February 1, 1900, and copied in full in the opinion of *Hobbs* v. *Virginia National Bank of Petersburg, post,* page 802, 128 S. E. 46. That agreement is not an association of Hobbs and Thomas to carry on as co-owners the business for profit, and did not at any time make them partners as to each other, therefore, they were not partners as to third persons. Uniform partnership law, section 6, Acts 1918, chapter 365. No actual partnership having been created between them, they were not mutual agents, hence Thomas had no authority to borrow for the business upon Hobbs' credit. This is a concessum in the case.

But the plaintiff contends that Hobbs is a partner by equitable estoppel, and that the agreement of 1900

authorized Thomas to hold him out as a partner and borrow from the banks as much money as Thomas wanted for his business. Mutual agency is a legal consequence of an actual partnership, but to authorize a person to hold out another as a partner, the authority must clearly appear from the writing itself and the ostensible partner must know and consent to be held out, and the lender must give credit upon the faith of such holding out before any estoppel arises. After full discussion of this agreement in the case of *Hobbs* v. *Virginia National Bank of Petersburg, post,* page 802, 128 S. E. 46, I think I demonstrated that Hobbs never gave Thomas in that paper authority to hold him out to the banks for the purpose of borrowing money. Nor does the understanding between the parties or their construction of the agreement constitute an equitable estoppel, unless credit was given upon the faith of such representation after made. Section 16, uniform partnership law, Acts 1918, chapter 365.

In the instant case, there was evidence of an admission made by Hobbs that he was a partner in 1906; a claimed admission by silence at Hobbs' home in a talk with him by a banker and in the presence of Thomas, and several admissions made after the death of Thomas to the same effect. But the plaintiff never heard of them apparently until this litigation, and gave no credit upon the faith of them. It would be a most dangerous doctrine to hold that such admissions or common gossip work an equitable estoppel, or that Hobbs' construction of that paper was conclusive of his liability when the construction was never acted upon. No case or text-writer has ever laid down any such doctrine. Partnership by estoppel has well defined legal rules and principles, which must obtain before liability arises.

Early in January, 1922, Plummer, president of the

plaintiff bank, to whom J. W. Thomas & Company was indebted in the sum of $19,350.00, received a statement of assets and liabilities of the concern signed by Thomas.   This statement showed inventory $2,500.00, store fixtures $500.00, open accounts $1,500.00, cash in bank $300.00, balance of assets amounting to about $125,000.00, omitting life and accident insurance carried, was the property of Hobbs.   Liabilities were put at $500.00.   At the bottom of this statement Thomas wrote "deduct your accommodation."   When Plummer, who is a prominent lawyer, received this statement, he rejected the same, and wrote Thomas a letter that the statement should be made on one of the forms prepared by the bank and used for that purpose, and that he must secure Hobbs' signature also to the paper. Why he made the request for the signature of Hobbs at that time does not clearly appear, but he says if Hobbs had signed he would have called the loan.   He must have known that Thomas' statement did not bind Hobbs if he was not an actual partner.   Plummer certainly must have believed Hobbs was an actual partner, and wanted Hobbs' admissions thereof, but this would not work an equitable estoppel if untrue. Some authorities hold that a person held out as a partner without his knowledge may ratify such holding out and thus become bound, but in order to constitute a ratification the party to be bound must have full knowledge of all of the facts, and intend to be bound thereby.   30 Cyc., page 528.   So the bank, if it wanted Hobbs to ratify—it should have applied to him—told the amount of indebtedness and if he had refused, the issue would have been made at that time, and it would have been in no worse nor better position that it was at the trial.

Plummer, however, left to Thomas to get that signature.   Several days afterwards he returned, upon the

bank form, the same statement that Plummer had formerly rejected with what purported to be Hobbs' name signed thereto, but it omitted the phrase "deduct your accommodation." This statement omitted insurance to the amount of $30,000.00 and put the only indebtedness of the concern at $500.00, open accounts not due, when at that time the bank held paper of the concern to the amount of $19,350.00. It is very apparent from this statement that it was false and signed by Hobbs through deception. The bank should have known this, and that a paper which suppresses the truth cannot operate as an estoppel. That statement told the bank officials that Thomas was deceiving Hobbs as he had been doing them for years. That paper should have put them upon inquiry, and if Hobbs had been communicated with no doubt they would have known the truth, and the fabric of credit of J. W. Thomas & Company would have crumbled and this bank would have been $7,000.00 worse off than it is today.

But conceding that Hobbs signed the statement which was furnished to Plummer, it cannot work an estoppel because no credit was given upon the faith thereof. The $19,350.00 debt had been contracted years before, and the renewals of the evidence of that indebtedness was not extending new credit, but mere evidences of the same debt, which Plummer was insisting must be curtailed. *Morriss* v. *Harveys*, 75 Va. 726; *Bowman* v. *Miller*, 25 Gratt. (66 Va.) 331, 18 Am. Rep. 686; *Fidelity Loan, etc., Co.* v. *Engleby*, 99 Va. 168-173, 37 S. E. 957; *Commercial Bank* v. *Miller*, 96 Va. 357, 31 S. E. 812.

Nor can the conversation with Mr. Gilliam in which, after the death of Thomas, he stated that Hobbs

thought he had signed a paper guaranteeing these notes work an estoppel, as it is not evidenced for any purpose against Hobbs nor could it have any retroactive effect upon this transaction. The other admissions which contradict Hobbs' testimony as to his intention do not operate as estoppel but simply impeach his credibility.

I have not discussed an equitable estoppel, as the law is not questioned and the only issue before this court is, has Hobbs consented that Thomas might represent him to the bank as a partner to borrow $19,-350.00? The evidence establishes that the loan was made on the understanding and statement by Thomas that Hobbs was a partner without his knowledge and consent. This was untrue and there can be no recovery against Hobbs.

There being no evidence that Hobbs ever authorized Thomas to hold him out to the public or plaintiff as a partner in the concern of J. W. Thomas & Company, and section 6365 Virginia Code being mandatory, this court should enter judgment for the defendant, Hobbs.

ON PETITION FOR REHEARING FILED BY NATIONAL BANK OF PETERSBURG.

June 10, 1926.

McLEMORE, J., for the judges concurring.

In the petition for rehearing it is pointed out that in the grounds of defense filed by the defendant, Hobbs, it was alleged that the money loaned by the bank to the partnership was not to be used by Thomas to carry on the business; that the amount of assets of the partnership did not justify the bank in lending the amount of

money that was loaned, and that the bank knew or in the exercise of due care and caution should have known of both of these matters. It is argued that therefore these matters were embraced in the issues submitted to the jury. These statements in the grounds of defense are not exactly equivalent to the issues, for the trial of which the case was remanded. But they were apparently intended to put in controversy the matters included in the special issues prescribed in this court's opinion, and the instructions of the court below in effect excluded them from the consideration of the jury.

On the trial below two instructions were granted at the request of the plaintiff. The first of these instructions given for the plaintiff bank told the jury practically that each member of a partnership is bound by the acts of any partner, and whenever a business of a firm involves the borrowing of money, notes issued within the scope of the business by one partner, in the name of the partnership, binds all partners. That last sentence in this instruction states that "under such conditions, it is of no consequence whether the partners were acting in good faith or not." The partnership business conducted by J. W. Thomas & Company was a trading or commercial business, involving buying and selling, and, therefore, under this instruction the borrowing of money was within the scope of the business and an implied authority resulted in Thomas to borrow money and execute notes therefor generally. But the effect of the entire instruction is to withhold from the jury consideration of the question relative to any issue of Thomas' having exceeded his implied agency and so having overstepped his authority. The second of these instructions properly defined the liability of Hobbs as a partner. The mere fact that one partner borrows money in the firm name, in fraud of the other partners,

without the knowledge of the lender, does not prevent complete partnership liability.

In order that a recovery by the bank may be defeated, an affirmative finding must be returned by the jury in both of the two issues ordered; and as pointed out in the opinion of the court the burden of proof on the trial of these issues rests upon the defendant in the case, as they involve an affirmative defense.

The evidence in the present record, bearing upon the two issues is, we think, sufficient to warrant the court in remanding the case.   Its strength and weight depending chiefly upon the oral testimony of Mr. Hobbs, at times vague and indefinite, and upon some of the documentary evidence, may not be very convincing, but this court should not undertake to determine any inferences which may be drawn from it, nor whether any inference adverse to the bank can or should be drawn from it.

The court has given this case and its companion case, in which the Virginia National Bank is the plaintiff, prolonged consideration and a majority of the court finally agreed upon the disposal of them as made by the opinions announced.

The rehearing is denied.

*Reversed and remanded.*