# Richmond

## JULIUS NACHMAN v. CHATHAM-PHENIX NATIONAL BANK AND TRUST COMPANY.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*R. A. McIntyre, Joseph I. Nachman* and *Edwin H. Gibson,* for the plaintiff in error.

*Richards & Richards,* for the defendant in error.

HUDGINS, J.,* delivered the opinion of the court.

At the threshold of this case we are met with a motion to dismiss the writ of error on two grounds: (1) That op-

---

* This case was argued March 29, 1933, but due to unavoidable circumstances it became necessary to reassign it, which was done at the September term, 1933.

posing counsel were not given the required notice of the time and place the bill of exceptions would be delivered to the judge; (2) that after the certificate and bill of exceptions were signed they were not "forthwith delivered or transmitted to the clerk" of the Circuit Court of Fauquier county.

The pertinent provisions of Code, sections 6252 and 6253, involved in ground No. 1, were construed in *Scholz v. Standard, etc., Co.,* 145 Va. 694, 134 S. E. 728, 729, where Judge Burks said:

■ "The statute does not require the notice to be made a part of the record, but simply that it shall be made to 'appear in writing' to the trial court or judge that the notice was given. If the notice was in fact given, that fact may be established in some satisfactory manner, as by certificate of the trial judge, or by affidavit."

■ To avoid needless controversies of this nature which have no bearing on the merits of the case, it is important to have the record affirmatively show that the required notice was given and that the trial judge had before him written evidence of that fact. As Judge Burks said in the case above cited, "It must in some way be made to appear affirmatively that the notice was given, or waived, but the manner of showing this fact is not pointed out by statute."

■ It affirmatively appears in the affidavits filed in opposition to the motion that in the trial of this case a stenographer was present and transcribed the evidence, together with the incidents of the trial; that final judgment was entered on the 30th day of May, 1932; that some time in the month of June following, two of the attorneys representing the opposing parties met in the clerk's office and together went over the evidence and rulings of the court in the progress of the trial on the different questions raised and agreed on such corrections as appeared to them necessary.

On July 6th, Major McIntyre, of counsel for plaintiff in error, gave verbal notice to Mr. Paul C. Richards, Jr., of

counsel for defendant in error, that on July 13th he would present the certificate of evidence and the bill of exceptions to the trial judge at Leesburg; that on the morning of July 13th Major McIntyre called by the office of Mr. Richards, in Warrenton, and suggested that Mr. Richards, as his guest, ride with him to Leesburg for the purpose of presenting these papers to the judge. Mr. Richards did not think it was necessary for him to make the trip, as he had already been over the papers in the case and had agreed that they were correct, but he did write a letter to the judge, which he entrusted to Major McIntyre for delivery. Major McIntyre delivered this letter on that day and after reading it the judge examined the certificate of evidence and the bill of exceptions and signed them.

Mr. Richards, in his affidavit, states that the only notice he received was on the morning of July 13, 1932, when Major McIntyre invited him to go with him to Leesburg for the purpose of obtaining the judges signature to the certificate and bill of exceptions; that due to such short notice, he was not able to accept the invitation, but he at once communicated with the judge by letter, stating therein that he desired to question certain parts of the record and exhibits.

It is significant to note that Mr. Richards does not claim that he objected to the notice because it was only given him that day, nor does he state the exact nature of his objections to the certificate and bill of exceptions. There is no denial of the fact that the judge received this letter before he signed the papers. It is inconceivable to us that, if counsel had notified the judge of his objection to the shortness of the notice and raised serious objections to the correctness of the bill of exceptions, the judge would have signed the papers without giving him a reasonable opportunity to present his objections. The rule in *Scholz* v. *Standard, etc., Co., supra,* is decisive on this question.

It is also claimed that the certificate of evidence and the bill of exceptions were not delivered to the clerk with-

in the time required by the two sections, as construed in *Omohundro* v. *Palmer,* 158 Va. 693, 164 S. E. 541.

It appears from the affidavits filed, that two copies of the evidence were left with the clerk, and that on the day the judge signed the papers Major McIntyre delivered to the clerk the certificate, consisting of numerous typewritten pages fastened together, and the detached bill of exceptions, with the request that he make a transcript of and certify the record; that the clerk examined the papers and attached thereto his certificate, properly signed, under date of July 13, 1932. The record, which included the pleadings, the orders of the court, the stenographer's transcript of the evidence, including the rulings of the court, the exceptions thereto, and the instructions, all fastened together, and the detached bill of exceptions were delivered to Major McIntyre, who sent them to his associate, Mr. Joseph I. Nachman, at Staunton, on the same day.

The petition was duly prepared and, together with the record thus made up, was received by the clerk of this court on July 19, 1932, and a writ of error was granted by one of the justices of this court on July 29th. On August 6th, after the writ had been granted, the clerk of this court ascertained that the bill of exceptions, found on pp. 66 and 67 of the printed record, with the original signature of the trial judge, was detached from the other part of the record as certified. It was thereupon returned to Major McIntyre, with the suggestion that he have the clerk of the Circuit Court of Fauquier county put this bill of exceptions in its proper place in the record. The papers and Mr. Stewart Jones's letter were given to the clerk of the Circuit Court of Fauquier county on August 8th, with the request that he make the proper correction. This he failed to do, but detached the certificate he had made on July 13, 1932, made a typewritten copy of the bill of exceptions, placed it in its proper place in the record, and attached a new, but undated, certificate to the entire record, and caused the papers to be returned to this court.

In support of the motion to dismiss, there was filed an affidavit of the clerk of the Circuit Court of Fauquier county stating that no certificate of evidence had ever been filed in his office, and that no bill of exceptions was filed until August 8, 1932. The clerk does not deny that on July 13, 1932, Major McIntyre delivered in his office certain papers in this case bearing the signature of the trial judge, and that he certified some papers as the record on that day. If the papers so certified did not contain the certificate of evidence and the bill of exceptions, we are at a complete loss to know what papers Major McIntyre gave the clerk, as the only other papers in the case were the pleadings and the orders of the court, which needed no authentication by the judge. The so-called certificate of evidence contains the evidence, including the exhibits, the rulings of the court during the progress of the trial, and the instructions.

At this point we might say that in preparing for a review of the case, counsel for plaintiff in error acted under the provisions of Code, section 6253, and used a certificate in lieu of a bill of exceptions, duly authenticated by the signature of the judge. All of the questions raised are sufficiently preserved in this certificate, but in addition counsel prepared a bill of exceptions, found on pages 66-68 of the record, likewise signed by the trial judge, which contains needless repetitions. Inasmuch as this paper was not fastened to, or properly paged in, the certificate as it was sent to the clerk of this court, the whole record should have been returned to the clerk for this particular correction and paging and for no other purpose.

The evidence conclusively shows that the certificate and the bill of exceptions were duly authenticated by the trial judge within sixty days from the entry of final judgment, and were on the same day returned to the proper custodian and a request made of him for a proper transcript of the record, and through ignorance or mistake the clerk permitted the original certificate to be used for the

purpose of obtaining a review by this court. This should not have been done, but under the circumstances, plaintiff in error should not be made to suffer for a mistake of the clerk. The motion to dismiss the writ is denied.

Julius Nachman, defendant below, assigns error to the ruling of the trial court in setting aside a verdict in his favor and entering judgment against him for plaintiff.

The correctness of this ruling depends upon whether or not there was any substantial evidence to support the verdict of the jury.

On or about September 27, 1930, under a written contract, Julius Nachman agreed to pay $2,500 for certain stock in L'Aide, Inc., and for the exclusive right to sell and distribute in certain territory certain articles to be manufactured by this corporation. In payment for this stock and privilege, Nachman gave his check for $500 and executed a note for $2,000, dated September 27, 1930, payable on or before April 1, 1931, to the order of the corporation, at the Marshall National Bank and Trust Company, Marshall, Virginia.

On November 24, 1930, one Stephen N. Bobo, who for ten years or more had been a depositor of, and was well known to, Chatham-Phenix National Bank and Trust Company, of New York, introduced one Hodge Lester, treasurer of L'Aide, Inc., to Arthur L. Barnes, an active vice-president of the bank, and stated that the corporation desired to open an account. Hodge Lester, as treasurer, offered for discount the Julius Nachman note. The bank, after investigating the financial standing of the maker, acquired at the usual rate of discount the note indorsed by the payee and Stephen N. Bobo. Nachman testified that on or about January 1, 1931, he became suspicious of the representations made to him concerning L'Aide, Inc., and upon investigation found that these representations were false and fraudulent. Upon ascertaining this fact, he immediately repudiated his contract with L'Aide, Inc.

It, therefore, affirmatively appears from defendant's testimony that the bank acquired the note before

even the maker had notice of any defect in the title of the instrument, hence the question of the good faith of the bank in its original purchase of the note is eliminated from further consideration. See *Fleshman* v. *Bibb,* 118 Va. 582, 88 S. E. 64; *Moore* v. *Potomac Savings Bank,* 160 Va. 597, 169 S. E. 922, 926.

Defendant admits that when the bank acquired the note it became a holder in due course within the meaning of the law merchant, but contends that by its action subsequent to the date the note matured the bank lost its right to enforce payment against the maker. To support this contention, defendant relies upon the following evidence:

On April 1, 1931, the date that the note matured, the bank caused it to be presented for payment at the Marshall National Bank and Trust Company, of Marshall, Virginia. Payment was refused by Nachman and notice of protest mailed to the indorsers. The note was returned to plaintiff, who shortly thereafter placed it for collection with Kaye, McDavitt and Scholer, its New York attorneys, who evidently attempted to collect it from L'Aide, Inc., and Stephen N. Bobo. On June 11, 1931, Bobo went to the bank for the purpose of making some adjustment of the matter, and on that day the bank accepted his note for $2,000, which its ledger sheet shows was discounted and the proceeds placed to the credit of L'Aide, Inc., and debit slips were made to this deposit showing that the proceeds of this note were applied in payment of the debt evidenced by the Nachman note.

Judge Staples, in *Morriss, et al.* v. *Harveys & Williams,* 75 Va. 726, 733, said:

"In a case decided by the Supreme Court of Pennsylvania, cited in 5th Rob. Prac. 863, Rogers, J., in discussing a similar question, said: 'Whether taking the separate note of one of the parties amounts to an extinguishment or satisfaction of a joint debt depends upon the intention of the parties, and, in the absence of all proof of a special agreement, the giving up or the retention of the original security will, in general, be a decisive circumstance, for it

is difficult to account for the fact except on the supposition that in the one case it was intended in case of need, to enforce the joint liability, or, in the other, to depend altogether upon the responsibility *of one* of the joint debtors. Where a joint debtor insists that the separate note is substituted and is in satisfaction of the joint debt, the *onus* is upon him, and to discharge himself from liability, it will be necessary to show a special contract to that effect, or that, in addition to a separate note being taken for the amount of the debt, the original bills were given up to the debtor.' "

Judge Lewis, in *Fidelity Ins., etc., Co.* v. *Shenandoah Val. R. Co.*, 86 Va. 13, 9 S. E. 759, 763, 19 Am. St. Rep. 858, said:

"In a case, therefore, of a change of securities, the question always is, What was the intention of the parties? or, as it is usually expressed, the question whether the transaction amounts to a novation is a question of intention, to be derived from all the circumstances of the case, although nothing positive be expressed. And in the absence of proof of a special agreement, the giving up or the retention of the original security will, in general, be a decisive circumstance in determining that question; for if the creditor means, in any contingency, to resort to the original indebtedness, he will scarcely be willing to surrender all evidence of that indebtedness to his debtor without fortifying himself with some acknowledgment of the real nature of the transaction. This was decided in *Morriss* v. *Harveys & Williams,* 75 Va. 726, and such is the well settled doctrine." See, also, *Fidelity L. & T. Co.* v. *Engleby*, 99 Va. 168, 37 S. E. 957; *Barnes, et al.* v. *Crockett's Adm'r*, 111 Va. 242, 68 S. E. 983, 36 L. R. A. (N. S.) 464; *Hobbs* v. *National Bank*, 147 Va. 792, 133 S. E. 611; *Waynesboro Nat. Bank* v. *Smith*, 151 Va. 481, 145 S. E. 302.

Mr. Arthur Barnes, a witness called for the bank, testified that the $2,000 note of Bobo was taken as additional collateral to the Nachman debt. He states that the acceptance of this note and application of the proceeds to

payment of the debt evidenced by the Nachman note was simply a bookkeeping entry. His explanation of this transaction is somewhat confusing. When pressed on cross-examination to state who presented him with the Bobo note, he said, "As I remember the transaction it was really handled by my assistant, and we requested Mr. Bobo for the note."

Neither Bobo nor the officer of the bank who accepted the note was called as a witness. The record is therefore silent as to just what was the agreement between the bank and Bobo when it accepted his note on June 11th. Barnes denied that on this particular occasion the bank gave the note to Bobo. The fair inference from the testimony is that at this time the note was not actually in possession of the bank, but was held for collection by its New York attorneys. Barnes, on cross-examination, was asked the following question: "How did he (Bobo) acquire possession of it?" to which he replied, "He has not got it, we have the note." This statement was made on May 24, 1932. In July, 1931, the note was sent by the New York attorneys to Richards & Richards, attorneys, of Warrenton, Virginia, who sent the following letter to the maker:

"July 31, 1931.

"Mr. Julius Nachman,
 "Marshall, Virginia.

"Dear Sir:

"We have today received from New York City note signed by you on September 27, 1930, payable in the principal sum of $2,000.00 to the order of L'Aide, Inc. The note was payable on or before April 1, 1931, and bears no interest. The note is now owned by one Stephen N. Bobo, of New York City.

"We have this note for collection as attorneys for Bobo and would appreciate it if you would make settlement with us of the principal amount of $2,000.00 plus $1.52 protest charges. If there is any adjustment or credit due

you it will be our pleasure and endeavor to make this adjustment for you, but in the absence of any adjustment due you we must demand that this settlement be made in the next few days.

"Very truly yours,
"RICHARDS & RICHARDS."

Nachman, through his attorney, replied to this letter and several other communications were exchanged between the attorneys for the parties, but no settlement was made.

Action by notice of motion was instituted against Nachman in the name of Stephen N. Bobo, returnable January 25, 1932. In the meantime, the parties doubtless had communicated their grounds of defense to Messrs. Richards & Richards. On January 26, 1932, Richards & Richards, for Bobo, took a non-suit, and later instituted this action by notice of motion in the name of Phenix National Bank and Trust Company.

Mr. Paul C. Richards, one of the attorneys, was called as a witness for the plaintiff, and stated that he had never received any communication from either Bobo or L'Aide, Inc., and had no authority to institute the action in the name of Bobo, that all of his communications were from the attorneys of Phenix National Bank and Trust Company. In support of this statement, he read to the court and jury a letter dated February 27, 1931 (more than a month before the note matured), which letter was subsequently withdrawn by him and hence is not a part of the record before us. Richards and Barnes were the only witnesses called in behalf of plaintiff.

Both sides agree that the intention of the parties at the time the new note was accepted is decisive, but they differ on the question of whether or not the jury had a right to believe that the bank accepted Bobo's note in lieu of the past due note of Nachman.

To carry the burden of proving such intention, Nachman relies: (1) Upon the records of the bank, which show

that Bobo's note was treated as a new obligation, regularly discounted, and the proceeds applied to the debt evidenced by his note; (2) demand for payment, after the note was dishonored, was never made upon Nachman in the name of the bank; (3) Bobo was well known to the bank, Nachman only from general inquiry made when his note was presented; (4) after the note was nearly four months past due he was notified by the attorneys now representing the bank that Bobo was the owner of his note; (5) action was instituted against him in the name of Bobo; (6) this action was not withdrawn until it was known that Nachman claimed the note was obtained by fraud, of which Bobo had knowledge; (7) it was within the power of the bank, but difficult, if not impossible, for Nachman to prove what passed between the bank and Bobo when it accepted Bobo's note; (8) the witness for the bank did not specifically deny that the bank gave Bobo control over the Nachman note after it accepted his note; (9) the bank failed to state what, if any, instructions it gave its New York attorneys, or whether such instructions were subsequently modified.

Regardless of what conclusion the court might have reached had it been its duty to pass upon the evidence, we think that from all the facts and circumstances the jury had a right to believe that at the time the bank accepted the note on June 11th, it was the intention of the parties to substitute Bobo's note for the Nachman note, and that possession and control of the Nachman note was transferred by the bank to Bobo, and when it was subsequently ascertained that Nachman was able to connect Bobo with the fraud perpetrated upon him the pending action was dismissed and control of the notes transferred to the bank and a new action in its name instituted.

For the reasons stated, the action of the court in setting aside the verdict of the jury is reversed, and a judgment on the verdict will be here entered for plaintiff in error.

*Reversed.*